UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNY J. SHILOH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF KERN, et al.,<br><br>　　　　Defendants. | Case No.: 1:20-cv-01438-DAD-JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING THE ACTION WITHOUT PREJUDICE FOR LACK OF JURISDICTION |

　　　　Kenny J. Shiloh seeks to proceed *pro se* and *in forma pauperis* in this action for discrimination based on a disability. (See Doc. 1.) The Court finds the plaintiff is unable to state a claim upon which relief may be granted, therefore, the Court recommends the plaintiff's motion to proceed *in forma pauperis* be **DENIED** and the complaint be **DISMISSED** without prejudice as the Court lacks jurisdiction.

**I.　　Screening Requirement**

　　　　When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

　　　　A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."

Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).

## II.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner.  Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted).  Vague and conclusory allegations do not support a cause of action.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

Iqbal, 556 U.S. at 679 (citations omitted).  When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. Id. The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a cognizable claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).

### IV. Allegations

Plaintiff alleges that Defendants subjected him to ridicule by publishing a minute order in which County of Los Angeles employee Liza M. Perez disclosed information about Plaintiff's disability. (Doc. 1 at 4.) According to Plaintiff, Perez deleted several traffic violations issued by the Los Angeles County Sheriff's Department. (Doc. 1 at 4.) Plaintiff alleges that Perez required Plaintiff to pay for services that were covered under a fee waiver that was issued by the court, and she refused to file a timely appeal for a case in which he was a defendant. (Doc. 1 at 4.) Plaintiff also alleges that Perez did not document the Plaintiff's change of address and refused to let him see the small claims advisor. (Doc. 1 at 4.)

Plaintiff reports that he filed a complaint in Los Angeles County Superior Court, then moved the case to Kern County, where Linda M. Krolnik, an employee of the County of Kern, deleted the names of each individual defendant that was on the Plaintiff's complaint from the County of Kern's database. (Doc. 1 at 4.)

Plaintiff further alleges that, through American Express, he discovered that Defendants Kennard, Patricia, Keven and Michal Shiloh incurred charges in the amount of $23,115 that the Plaintiff was not responsible for during a period in which Kennard and Patricia operated Kern Youth Services. (Doc. 1 at 7.) According to Plaintiff, it was not until November 16, 2012 that he discovered that Michael and Keven were cardholders, so Plaintiff filed a complaint for identify theft in January

2013. (Doc. 1 at 7.) Plaintiff reports that Kern Youth Services had utilized an address during a bankruptcy proceeding that is situated in the Northwest District of Los Angeles County, and the court wrongly dismissed a small claims action brought by the Plaintiff. (Doc. 1 at 7.) Plaintiff asserts that it was in this matter of Shiloh v. Shiloh, Kern County Superior Court case # S-l500-CV-278507 in which Defendants Kennard, Patricia and Michael Shiloh had presented Plaintiff's medical issues without authorization from the Plaintiff. (Doc. 1 at 8.) According to Plaintiff, Kevin Shiloh has four convictions for identity theft and has served two prison terms and one county term in Los Angeles County. (Doc. 1 at 8.) Plaintiff reports that due to these acts, the Plaintiff has struggled with regaining control of his credit rating and fears that, due to Kevin Shiloh's multiple convictions of identity theft, these individuals may steal his identity again. (Doc. 1 at 8.) According to Plaintiff, due to the ongoing issue with the County of Los Angeles, the case was dismissed due to an alleged failure to prosecute. (Doc. 1 at 8.) Plaintiff reports that he brought suit in Kern County Superior Court against Kennard, Patricia and Michael Shiloh for violating Cal C.C.P 56.36(c)(5). (Doc. 1 at 8.)

Plaintiff claims that when he was a resident of Los Angeles County, on June 9, 2014, he received an old notification from the Defendants that had been left at the Plaintiff's old residence in Monrovia, California, and this is when he discovered the breaches of Cal. Rules of Court 1.100(c)(4), the California Medical Information Act and the Americans With Disabilities Act of 1990. (Doc. 1 at 8.) According to Plaintiff, he was a Defendant in a case titled Value Rental Car INC v. Shiloh and had not issued a waiver granting Perez authority to release that information. (Doc. 1 at 8.) Plaintiff alleges that Perez also required him to pay for services that were covered by his fee waiver. (Doc. 1 at 8.) Plaintiff claims that Perez intentionally failed to update the Plaintiff's change of address information. (Doc. 1 at 9.) Plaintiff claims that he submitted a timely claim (6 months from June 9, 2014), which was rejected by the County of Los Angeles. (Doc. 1 at 9.) Plaintiff claims that he attempted to bring suit against the County of Los Angeles. (Doc. 1 at 9.) According to Plaintiff, he was unlawfully labeled a vexatious litigant under Cal C.C.P 39l(b) as Cal C.C.P 170.1(C). (Doc. 1 at 9.)

Plaintiff reports that John M. Coleman, counsel for the County of Los Angeles in Los Angeles County Superior Court case #BC608112, made motions that were unsupported by statute that required the Plaintiff to have his complaint given to a clerk with the Los Angeles County Board of Directors

4

and stamped by the clerk instead of being served via Cal C.C.P 413.10. (Doc. 1 at 9.) According to Plaintiff, he then enjoined Defendants County of Los Angeles to the Kern County case of <u>Shiloh v. Shiloh</u>, and the court later dismissed the case with prejudice. (Doc. 1 at 10.) Plaintiff reports that from the beginning, Coleman made intentional errors that constitute intrinsic fraud; he mislabeled the case of <u>Value Rental Car, INC v. Shiloh</u> to a federal case number, and the demurrer he issued on March 1, 2017 had "bogus codes that were irrelevant to the heart of the complaint." (Doc. 1 at 10.)

According to Plaintiff, Coleman had visited the Plaintiff's residence to deliver a document and was unaware that there were individuals at the residence and simply knocked on the door and left the papers on the Plaintiff's doorstep, which Plaintiff alleges was not a valid form of service. (Doc. 1 at 10.) According to Plaintiff, Defendants County of Los Angeles moved for motion for judgment on the pleadings in which a hearing was held on April 6, 2018 where the court orally stated that the Defendant Coleman's motion requesting relief for the County of Los Angeles was denied. (Doc. 1 at 10.) Plaintiff alleges that Defendants County of Los Angeles and the County of Kern conspired with each other to begin constructively "cherry picking" the Plaintiff's docket. (Doc. 1 at 10.)

Plaintiff reports that Defendant Braun was retained by the Shiloh Defendants, and he threatened the Plaintiff with a malicious prosecution suit after the lawsuit was dismissed against his clients. (Doc. 1 at 10.) According to Plaintiff, Braun and Coleman both moved for a demurrer which the court granted. (Doc. 1 at 11.) Plaintiff reports that the court eliminated the undisputable cause of action of the violation of the Cal CCP 56.36(c)(5) and only gave the Plaintiff two other causes of action in which there was no merit. (Doc. 1 at 11.)

Plaintiff reports that at some point between October 2018 and January 2019, Krolnik with assistance from Coleman and Braun were able to not only delete the names of Lisa M. Perez, Melvin Penny, Kennard, Patricia and Michael Shiloh off of the court record but force the Plaintiff into a judgment that he alleges had no legal support. (Doc. 1 at 11.) According to Plaintiff, on December 21, 2018, the case was dismissed in which the court orally stated that the Plaintiff's complaint was barred per Cal CCP 47. (Doc. 1 at 11.) According to Plaintiff, the court ignored the fact that Defendants Liza M. Perez and Melvin Penny were listed as Defendants and did not require them to respond. (Doc. 1 at 11.) Plaintiff also contends that the court ignored the fact that the vexatious litigant order from the

5

County of Los Angeles was imposed on the Plaintiff in error and during the same time period that Krolnik had deleted the names of the Shiloh Defendants, and Perez and the County of Los Angeles erased all of the Plaintiff's citations that were issued by the Los Angeles County Sheriff's Department against him that Plaintiff alleges were used as a retaliation tactic against him. (Doc. 1 at 11.)

According to Plaintiff, it was also discovered a significant time later that the County of Los Angeles had also issued a judgment against the Plaintiff in case #BC608112 in which he was required to pay an amount around $1,500, which Plaintiff alleges was an attempt to collect on a fraudulent judgment. (Doc. 1 at 11.) Plaintiff reports that on March 2, 2020, the Fifth District Court of Appeals decided to not allow the Plaintiff his right to appeal the decision made by the court on December 21, 2018. (Doc. 1 at 11-12.)

## V. Discussion and Analysis

### A. Claims against the County of Kern and County of Los Angeles

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. New York City Dep't. of Soc. Services, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Id., 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. Id. at 694; Gibson, 290 F.3d at 1185.

To establish municipal liability, Plaintiff must allege (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)); see also Monell, 436 U.S. at 690-92. A policy or custom of a government may be established when:

> (1) A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;

6

or

(3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

Pellum v. Fresno Police Dep't, 2011 U.S. Dist. LEXIS 10698, 2011 WL 350155 at *3 (E.D. Cal. Feb. 2, 2011) (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. Menotti, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." Mortimer v. Baca, 594 F.3d 714, 722 (9th Cir. 2010) (quotation omitted, citing Oviatt, 954 F.2d at 1477-78; accord. Canton, 489 U.S. at 390). To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Gibson, 290 F.3d at 1186 (citing Farmer v. Brennan, 511 U.S. 825, 841 (1994)). Plaintiff has not identified any custom or policy of the County of Kern or County of Los Angeles or alleged these municipalities had notice of any potential harm caused by its policies.

For municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused the plaintiff harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

The plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. See City of St. Louis, 485 U.S. at 123 ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Plaintiff has made no allegations

7

supporting a conclusion that the County of Kern or County of Los Angeles had a custom of violating civil rights. Moreover, Plaintiff has not plead sufficient allegations supporting a conclusion that he suffered a violation of his constitutional rights. Thus, a Section 1983 claim against the County of Kern and County of Los Angeles is not cognizable and the Court recommends such claims be dismissed.

### B.    *Rooker-Feldman* Doctrine

Plaintiff requests for an order vacating dismissals and orders against Plaintiff made in Los Angeles County and Kern County Superior Courts. (See Doc. 1 at 15-17.) Plaintiff also alleges that he was denied due process when the court struck Plaintiff's third amended complaint and required him to submit a fourth amended complaint. (See id.)

Under the *Rooker-Feldman* doctrine, a party may not seek appellate review in federal court of a decision made by a state court. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Ninth Circuit explained,

> Typically, the *Rooker-Feldman* doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the losers' federal rights.

Doe v. Mann, 415 F.3d 1038, 1041-42 (9th Cir. 2005); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (the *Rooker-Feldman* doctrine precludes a district court from appellate review of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced . . ."). Accordingly, the district court lacks jurisdiction over "claims . . . 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling." Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003) (citing Feldman, 460 U.S. at 483, 485)).

Significantly, the Ninth Circuit has determined that the *Rooker-Feldman* doctrine precludes a plaintiff from "challenging a state court decision declaring him a vexatious litigant." Bashkin v. Hickman, 411 Fed. App'x 998, 999 (9th Cir. 2011). In Bashkin, the plaintiff sought to state a claim under 42 U.S.C. §§ 1983 and 1985, asserting the order identifying him as a vexatious litigant violated his constitutional rights. Id. The Ninth Circuit determined,

>The district court properly concluded that the *Rooker-Feldman* doctrine barred Bashkin's action to the extent that he challenged the vexatious litigant order and any other state court orders and judgments, because the action is a "forbidden de facto appeal" of state court judgments, and raises constitutional claims that are "inextricably intertwined" with those prior state court judgments.

Id., citing Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003).

District courts within the Ninth Circuit have also determined a plaintiff is unable to challenge a state court order finding the plaintiff is a vexatious litigant. See, e.g., Hupp v. County of San Diego, 2014 WL 2892287 at *4 (S.D. Cal. June. 25, 2014) (concluding the *Rooker-Feldman* doctrine barred request for declaratory and injunctive relief based on a vexatious litigant order); Reiner v. Cunningham, 2011 WL 5877552 at *2-3 (C.D. Cal. Nov.18, 2011) (finding the plaintiff's complaint was barred by the *Rooker-Feldman* doctrine where the plaintiff alleged a due process violation against Los Angeles County Superior Court and a judicial officer).

Likewise, here, Plaintiff's claims are rooted in his speculation that he was unlawfully labeled a vexatious litigant and that the record does not show how the Plaintiff was vexatious. (See Doc. 1 at 9, 11, 13-14, 16.) Thus, it is clear that Plaintiff's claims are "inextricably intertwined' with the state court's decision that he is a vexatious litigant, and adjudication of his claims before this Court would undercut the ruling. As a result, his claims are barred as a matter of law by the *Rooker-Feldman* doctrine. See Bianchi, 334 F.3d at 898; Reiner, 2011 WL 5877552 at *2-3.

Plaintiff also seeks relief from "all and every order stemming from Los Angeles County Superior Court case #BC608112" and requests to "vacate judgment against Plaintiff in Kern County Superior Court case #BCV-16-1-101157." (Doc. 1 at 15.) Plaintiff's remedy was to seek appellate review of these orders in the state court if he was dissatisfied with the state court's decisions. The Court here is not permitted to sit in review of the actions of the state court.

### C.  Fourteenth Amendment – Due Process

#### 1.  *Procedural*

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff has not alleged

any facts that would support a claim that he was deprived of a protected interest without procedural due process.

### 2. *Substantive*

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 520 U.S. 1240 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). Plaintiff has not alleged any facts that would support a claim that his rights under the substantive component of the Due Process Clause were violated.

Plaintiff attempts to state a due process claim under the Fourteenth Amendment by alleging that the court struck Plaintiff's third amended complaint and required him to submit a fourth amended complaint. However, Plaintiff's allegations do not support a claim under the Due Process Clause. The claims under the Fourteenth Amendment should be dismissed.

### D. Disabilities Discrimination

Plaintiff appears to allege that certain individual defendants are liable under the Americans with Disabilities Act. (See Doc. 1 at 17-22.) "The ADA prohibits discrimination against a qualified individual with a disability in regards to terms, conditions and privileges of employment." Gribben v. UPS, 528 F.3d 1166, 1169 (9th Cir. 2008). To make a prima facie case of disparate treatment under the ADA, a plaintiff must show that, within the meaning of the ADA, he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001). For an act to be considered an "adverse employment action," the act must "materially" affect the compensation, terms, conditions or privileges of the plaintiff's employment. Jefferson v. Time Warner Cable Enters. LLC, 584 Fed. Appx. 520, 522 (9th Cir. 2014); Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

Plaintiff has not alleged facts by which the Court can reasonably infer that he is disabled. In order to allege that plaintiff is disabled under the ADA, he must state facts demonstrating that he has been diagnosed with a condition that limits his life activities. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); Gaines v. Diaz, No. 1:13-cv-1478 MJS, 2014 WL 4960794, at *6 (E.D. Cal. Oct. 1, 2014) (Plaintiff's claim that he "suffered from unspecified lower body mobility and pain conditions [did] not alone demonstrate a disability."). The Plaintiff's allegations simply state that some individuals allegedly made reference to Plaintiff's "mental state." (See, e.g., Doc. 1 at 19.) Accordingly, Plaintiff has not alleged facts to demonstrate that he is disabled under the ADA.

If plaintiff seeks to make a claim under the ADA, he may bring a claim pursuant to Title II of the ADA against state entities for injunctive relief and damages. See Phiffer v. Columbia River Correctional Institute, 384 F.3d 791, 792 (9th Cir. 2004), cert. denied, 546 U.S. 1137 (2006); Lovell v. Chandler, 303 F.3d 1039, 1051 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). He cannot seek damages pursuant to the ADA against defendants in their individual capacities. Eason v. Clark County School Dist., 303 F.3d 1137, 1144 (9th Cir. 2002), cert. denied, 537 U.S. 1190 (2003), (citing Garcia v. S.U.N.Y. Health, 280 F.3d 98, 107 (2d Cir. 2001)). It appears Plaintiff's primary concern in this regard is that certain individuals disclosed information about Plaintiff's medical issues without authorization from the Plaintiff. (See Doc. 1 at 4, 8.) However, Plaintiff may not bring an ADA claim for damages against defendants in their individual capacity.

### E.     Retaliation

Based on the present allegations, it appears that Plaintiff may also be attempting to assert a retaliation claim under Title V of the ADA. Title V generally prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under section 12203(a), plaintiff must allege that (1) he has engaged in a protected activity; (2) he was subjected to an adverse action; and (3) there was a causal link between the protected activity and the adverse action. Brown v. City of Tucson, 336 F.3d 1181, 1186 (9th Cir. 2003). A "protected activity" is any activity through which a plaintiff pursues his rights under the

ADA. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 850 (9th Cir. 2004). While most claims of retaliation under the ADA arise in an employment context, "the ADA explicitly allows retaliation claims outside the employment context, 42 U.S.C. § 12203(a), where plaintiffs have alleged that they were retaliated against for complaining of discrimination prohibited by Title III of the ADA . . . ." Davison v. Hart Broadway, LLC, No. CIV. S-07-1894 LKK CMK, 2009 U.S. Dist. LEXIS 48572, at *30 n.9 (E.D. Cal. May 26, 2009) (Karlton, Senior Judge) (noting that ADA retaliation cases outside the employment context look for "adverse actions," as opposed to "adverse employment actions"). Plaintiff has also not plausibly alleged facts suggesting that defendants retaliated against him for having lodged a complaint, made a charge, or opposed an "act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a)-(b).

Accordingly, Plaintiff has failed to properly plead an actionable ADA claim, and such claim cannot serve as the basis for federal question jurisdiction.

### F. Identity Theft

The federal identity theft statute, 18 U.S.C. § 1028, is criminal in nature and provides no private cause of action or civil remedy. Rahmani v. Resorts Int'l Hotel Inc., 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), aff'd, 182 F.3d 909 (4th Cir. 1999); see also Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of claims brought under criminal provisions that "provide[d] no basis for civil remedy"); Williams v. Technique Towing/Advanced Automotive/GB7, 2011 U.S. Dist. LEXIS 77089, at *6 (E.D. Cal. July 12, 2012) (explaining "claims under Title 18 U.S.C. must fail because these criminal statutes do not provide a private right of action"). Thus, to the extent Plaintiff seeks to state a claim under 18 U.S.C. § 1028, his claim fails as a matter of law and the Court recommends this claim be dismissed.

### G. State Law Claims

It is unclear whether Plaintiff is attempting to assert state law claims. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). The Supreme Court has cautioned that "if the federal claims are

dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In the absence of any cognizable federal claims, the Court declines to address any purported state law claims.

## VI. Findings and Recommendations

Based upon the facts alleged, it does not appear the deficiencies can be cured by amendment, and granting leave to amend would be futile. See Lopez, 203 F.3d at 1130; See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Accordingly, the Court **RECOMMENDS**:

1. Plaintiff's complaint be **DISMISSED** without prejudice for lack of jurisdiction;
2. Plaintiff's motion to proceed *in forma pauperis* be **DENIED**; and
3. The Clerk of Court be **DIRECTED** to close this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 28, 2020**             **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE